[Civ. No. 4816. Fourth Dist. July 14, 1954.]

ALBERT A. KRIENKE, Respondent, v. FOUNDERS' INSURANCE COMPANY (a Corporation), Appellant.

Higgs, Fletcher & Mack for Appellant.

J. Perry Langford for Respondent.

BARNARD, P. J.—In this action on an insurance policy, the jury returned a verdict for the plaintiff and the defendant has appealed from the judgment.

The plaintiff was the owner of the fishing boat "Little Albert," which was moored near the civic center in San Diego. On January 18, he entered into an agreement with one Al Koritz which was entitled "Option to purchase boat—Little Albert." It was then stated that "this option" was made on that day between these parties; that Koritz agrees to purchase the boat for $5,250, payable $200 "upon the signing of this option," $1,200 on February 15, 1951, at which time Koritz was to receive a bill of sale and give back a preferred mortgage for $3,850, payable in monthly payments; that Koritz agreed to insure the boat on February 15, 1951, in the amount of the unpaid balance, with the insurance payable to the plaintiff to the extent of the balance due; that Koritz is to have possession of the boat "upon the signing of this Option, in order to make repairs, replacements and to remodel said Boat"; and that Koritz is not to take or permit the boat to be taken from San Diego Harbor "before this Option is perfected on February 15, 1951." The agreement refers to an "option" in six places.

On January 19, 1951, the defendant placed a "30-day binder" on the boat reinstating a previous policy covering described perils, including a loss from "Thieves" and "Barratry of the Master and Mariners, and of all other Perils, Losses and Misfortunes that have or shall come to the Hurt, Detriment or Damage of the said ship, &c, or any part thereof." The original policy contained a warranty that the boat should be "Laid up and out of Commission" within the harbor; and a clause providing that the insurance should terminate if the boat started to leave that port.

A door to a cabin on the boat, giving the only access to the engine room and other equipment on the boat, was kept locked and the plaintiff retained the key. On January 21, 1951, a Mr. Nash was hired by one Collins to tow the boat to another location in San Diego Harbor, some 4 miles away. Nash testified that when he arrived at the location of the Little Albert he was introduced by Collins to a man who was there "as Koritz, the new owner of the boat"; that he had no

conversation with that man and no conversation with Collins which that man could hear; that when he arrived there the boat door of the Little Albert was open, and he did not notice whether or not it had been forced open; that Collins told him where he wanted the boat taken and he took it to that place; that when they arrived the same man was waiting there; that Collins then gave him an army radio, an anchor and a compass as compensation for moving the boat; that this man, who had been introduced as Koritz, was watching the procedure but did not go on board the boat; that he had never met this man before; that in March, 1952, he saw that same man again in an office in a bank building in San Diego; and that he saw the name "Koritz" on the directory at the entrance to this building.

On January 23, 1951, the boat was found at the place where Nash had taken it, in a stripped condition. The engine and several thousand dollars worth of equipment were gone, the door to the boat had been broken open, and part of the roof of the cabin had been removed. The plaintiff reported the loss to the defendant, resulting in an investigation. The missing property was not recovered except for the small items given to Nash by Collins as compensation for the towing job. An adjuster for the defendant testified that he met Koritz in March, 1951, at the office of the district attorney; and again met him on March 17, 1952, in the office of "O'Neils and Koritz" in the bank building, at which time Nash was present. It was conceded at the trial that this 30-day binder issued by the defendant was on a "Port Risk Form," but we find no evidence in the record as to the exact terms and conditions stated therein.

Appellant's main contention is that it appears, as a matter of law, that the evidence is not sufficient to establish a loss covered by the policy since it affirmatively appears that the damage was done by one rightfully in possession of the boat, and that such a person could not be a thief under the terms of a marine insurance policy. It is argued that a contract of marine insurance is governed entirely by admiralty law; that the term "Thieves" in a contract of marine insurance means assailing thieves from without, and probably simple larceny by third persons, but never includes larceny or embezzlement by the Master or those lawfully in possession; that Al Koritz, being lawfully in possession, could not be guilty of theft or embezzlement; and that, at most, he was guilty of a mere breach of contract. In support of this contention the appellant relies on *Atlantic Insurance Co. v. Storrow*

& *Boyd* (1835), 5 Paige (N.Y.) 285; *Marshall and Hartshorn* v. *Nashville Marine & Fire Ins. Co.* (1839), 1 Humph. (Tenn.) 99; and *American Ins. Co.* v. *Bryan,* 26 Wendell (N.Y.) 563 [37 Am.Dec. 278]. While some of the language used in these decisions lends support to some of these contentions, these cases are not controlling under the facts which here appear.

Assuming that the rule thus contended for, as applicable to a policy of marine insurance covering ships engaged in commerce on the high seas, is still effective, its applicability to the situation here in question would still be doubtful. This was a special contract, applicable only in one harbor, and issued to cover and protect the insured under certain known conditions for a short time, until he was in a position to receive other protection. It appears, without conflict, that the respondent showed his contract with Koritz to appellant's agent and that the policy was issued after the agent read that agreement. A further doubt exists with respect to Koritz' ownership and right of possession under the terms of the contract. It does not conclusively appear that he was the owner, and in possession, within the meaning of the ancient law relied on by the appellant. The meaning of the contract is somewhat ambiguous with respect to whether it was intended to be a mere option or a conditional sales contract, effective immediately. It clearly appears that it was not the usual conditional sales contract giving an immediate right to full possession, the usual indication of present equitable ownership. The only right of possession given was strictly limited both as to purpose and as to where it might be exercised. In view of the language used, the court's interpretation of the contract, as in effect an option, cannot be said to be unreasonable, in the light of the contract and the evidence.

Regardless of the meaning of the contract, there is ample evidence that possession of the boat was not actually given to Koritz. The boat was locked so that it could not be operated, and the respondent kept the key. After the agreement was signed it was orally agreed by the parties that the respondent would keep the key and that Koritz would ask for it when he was ready to repair or remodel the boat; in other words, when he was ready to take the limited possession authorized by the contract.

Even if Al Koritz were to be considered as the owner of this boat under the old law, or any law, further questions of fact

appear with respect to the theft itself. The respondent was the legal owner and entitled to possession of the boat until he surrendered the key. There is ample evidence that someone broke into the boat, enabling it to be towed away, and that someone took practically all of its equipment from it without the respondent's knowledge or consent, which justified an inference that a theft occurred. Under the evidence it could reasonably be inferred that Collins was the person who committed the theft. The appellant attempted to show that Al Koritz was the thief, but the most that can be said is that conflicting inferences in that regard could be drawn. Even if a man named Koritz was present when the boat was moved to the other location it was not shown that this was the same Koritz who signed the contract. There was no direct evidence that the man who was seen at the piers just before and just after the boat was moved, and who was later seen by two witnesses and thought to be a Mr. Koritz, was the one who had signed the contract. The evidence may well justify, but does not compel, such an inference. Moreover, if it be assumed that Al Koritz was there when the boat was moved, the boat was stripped at some later time and there is no evidence that he was then present or had anything to do with that event. Many questions of fact existed and the evidence, with the inferences which might reasonably be drawn therefrom, supports the verdict and judgment.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.